# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

SAMIRA RANDOLPH-ALI,

               Plaintiff

    v.

STEELTON POLICE DEPARTMENT, et al.,

               Defendants.

CIVIL ACTION NO. 1:16-CV-01625

(CONNER, C.J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION

This is a *pro se* action for damages, asserting several federal civil rights and state law claims against various Defendants pursuant to 42 U.S.C. § 1983. Now pending before the Court is *pro se* Plaintiff Samira Randolph-Ali's amended complaint alleging violations of her rights under the United States Constitution against the following individuals: Steelton, Pennsylvania Police Department Detectives Anthony Minium and William Shaub and Officers Troy Elhaj and William Shaffer (collectively, the "Steelton Police Defendants"); Dauphin County, Pennsylvania District Attorney Edward Marisco and Assistant District Attorneys Katie Adams and Chris Jason (collectively, the "District Attorney's Office Defendants"); and Dauphin County Social Services for Children and Youth ("DCSSCY") caseworkers Nicole Carter and Tia Hunt (collectively, the "DCSSCY Defendants"). (Doc. 10). Having conducted its statutorily-mandated screening review of Plaintiff's amended complaint, for the reasons stated herein, this Court recommends that the amended complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

## I.  BACKGROUND

On August 5, 2016, Plaintiff, proceeding *pro se*, filed the instant civil rights action (Doc. 1), along with a motion to proceed *in forma pauperis* (Doc. 2).[1] Plaintiff filed an amended complaint as a matter of course pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure on September 26, 2016. (Doc. 10).

Plaintiff's amended complaint details several clashes she engaged in over the past seven years with police departments and other municipal agencies in the Harrisburg area. (Doc. 10). Plaintiff begins by describing a difficult childhood in which she endured both physical and sexual abuse. (Doc. 10, at 10). She gave birth to her first child as a teenager and met Umar Ali—her now ex-husband—in 2008 and had additional children with him. (Doc. 10, at 10). Plaintiff alleges that her ex-husband physically abused her throughout their marriage, which resulted in numerous calls to the police. (Doc. 10, at 10-11). Because Plaintiff consistently refused to testify against her ex-husband, she alleges that the police and district attorney's office retaliated against her by manufacturing several legal problems of her own. (Doc. 10, at 10-11). For instance, Plaintiff describes an April of 2009 incident where she was arrested by Harrisburg police and jailed for nine days after police responded to her domestic disturbance call against her husband. (Doc. 10, at 13-15). Plaintiff brought a civil rights action against the City of Harrisburg as a result of this incident, which ultimately settled.[2] (Doc. 10, at 14-15). Plaintiff

---

[1] The Court granted Plaintiff's motion for leave to proceed *in forma pauperis* in an Order dated October 3, 2016. (Doc. 12).

[2] In addition to the amended complaint in this matter, the Court takes judicial notice of the other publicly-available docket sheets, opinions, and orders entered in state and federal proceedings involving Plaintiff. *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

moved from Harrisburg to Steelton in January of 2013 after her Harrisburg home was destroyed by a fire that she blames the Harrisburg Police Department for somehow initiating.[3] (Doc. 10, at 15-16).

The facts that form the basis for the claims against the Defendants named in Plaintiff's amended complaint begin with another domestic violence incident involving Plaintiff and her ex-husband, which occurred on August 7, 2014. (Doc. 10, at 16). Steelton police officers, including Defendants Minium and Elhaj, responded to the scene and confronted Plaintiff at the front door, seeking to go inside and arrest her ex-husband.[4] (Doc. 10, at 16). Plaintiff took issue with Minium's angry tone of voice, and alleges that he threatened to charge her with obstruction of justice before shoving her through the doorway and onto the floor then deploying his taser on her. (Doc. 10, at 16). Minium and Elhaj then handcuffed and arrested Plaintiff, while leaving her ex-husband with just a marijuana summons. (Doc. 10, at 16-17). Plaintiff was charged with obstruction of justice, interfering with a police investigation, disorderly conduct, and possession of drugs and drug paraphernalia.[5] (Doc. 10, at 17). The police also took an

---

[3] Plaintiff maintains that these allegations are merely intended as background information for her current pleading and that she is not asserting claims against the Harrisburg Police Department in this action.

[4] Plaintiff asserts that Minium previously dated an assistant district attorney who is not named as a party to this case but told Mimium that Plaintiff enjoyed being abused and liked to sue the police. (Doc. 10, at 16). These rumors then spread throughout the Steelton Police Department.

[5] Plaintiff takes particular issue with the drug charges, arguing that Minium charged her for these offenses despite the fact that her ex-husband told police that the marijuana was his and that the police reports falsely stated that the drugs and paraphernalia were found inside the home, even though it was found outside on a porch that was shared with the neighboring residence. (Doc. 10, at 17).

mugshot of Plaintiff and then posted it on the internet. (Doc. 10, at 17). Plaintiff ultimately agreed to plead guilty to the disorderly conduct charge in exchange for the dismissal of the remaining charges and the removal of her mugshot from the internet. (Doc. 10, at 17).

Just over a month later, on September 18, 2014, Plaintiff was seriously injured when a suspect being pursued by Harrisburg police on a high-speed chase crashed into her car. (Doc. 10, at 17-19). Plaintiff alleges that Harrisburg police were reckless in initiating the botched drugs sting that led to the chase and then in pursuing the suspects without activating their police cruisers' lights or sirens, thereby putting civilians at risk. (Doc. 10, at 17-19). Harrisburg police then allegedly falsified reports to cover up their own negligence. (Doc. 10, at 18-19). In all, Plaintiff allegedly spent four months in the intensive care unit of Hershey Medical Center and another eight months bedridden while awaiting a hip replacement, and additionally suffered numerous broken bones as a result of the crash. (Doc. 10, at 18-19). Plaintiff sued the City of Harrisburg in a separate action as a result of this incident, but claims that the police were angered by her lawsuit and the publicity it generated. (Doc. 10, at 19).

Plaintiff next complains of a series of events that began on May 5, 2016, when Plaintiff called Steelton Police to report that her seventeen-year-old daughter ran away from home. (Doc. 10, at 20). Just a few minutes after contacting the police, Officer Shaffer arrived at Plaintiff's home and informed Plaintiff that her daughter walked into the police station and accused Plaintiff of beating her up. (Doc. 10, at 20). Plaintiff asserts that it was "typical of" her daughter to make up these types of false accusations, and that combined with the fact that Plaintiff was still largely disabled from the car crash, Shaffer should have known that the allegations were false. (Doc. 10, at 20). Plaintiff further complains that instead of interviewing her personally, the Steelton Police Department referred the case to DCSSCY, which then pulled

Plaintiff's children out of class and standardized testing to interview them several times a week and take "pictures of every little scrap and scar" on them. (Doc. 10, at 20). Plaintiff alleges that Detective Shaub twisted her children's words from the DCSSCY interviews in drafting the affidavit of probable cause, and that he was able to obtain an arrest warrant for Plaintiff with the help of Assistant District Attorney Jason. (Doc. 10, at 20-22). On May 26, 2016, Detective Shaub arrived at Plaintiff's home and arrested her on aggravated assault, child abuse, and child endangerment charges. (Doc. 10, at 21). Following her arrest, Plaintiff alleges that Shaub "went out of his way to publically defame [her] character" by digging up Plaintiff's old mugshot from 2014 and encouraging news outlets across Pennsylvania to run stories about Plaintiff's arrest that featured the mugshot. (Doc. 10, at 21). Plaintiff further asserts that Shaub wrote a letter to the local housing authority to inform it of the charges against Plaintiff in the hope of getting her housing assistance revoked, and which ultimately contributed to Plaintiff moving out because her landlord no longer wanted to rent to her. (Doc. 10, at 21, 23). Plaintiff claims that this entire episode was engineered by the Borough of Steelton to tarnish her reputation because of her ongoing lawsuit stemming from the Harrisburg car crash. (Doc. 10, at 21).

DCSSCY caseworker Nicole Carter and Detective Shaub both testified at the preliminary hearing for the charges against Plaintiff involving her children, which was held on June 30, 2016. (Doc. 10, at 22). Prior to the hearing, Plaintiff filed a grievance against Carter with her supervisors at DCSSCY, alleging that Carter pulled her children out of class and standardized testing to question them too frequently. (Doc. 10, at 22). Plaintiff alleges that Carter perjured herself at the hearing by falsely testifying that one of Plaintiff's sons told Carter that Plaintiff beat him. (Doc. 10, at 22). Furthermore, Plaintiff asserts that Carter's testimony was inconsistent with DCSSCY's subsequent report on the investigation, which found no abuse

committed by Plaintiff. (Doc. 10, at 23). Plaintiff also takes issue with Shaub's testimony at the preliminary hearing, alleging that he lied about having audio evidence when none existed and that he falsely stated that Plaintiff's daughter told him that Plaintiff attempted to stab her when in actuality Plaintiff's daughter just accused Plaintiff of cutting up her clothes. (Doc. 10, at 23). Plaintiff also alleges that Assistant District Attorney Katie Adams lied at a more recent August 17, 2016 bail hearing by claiming that Plaintiff's daughter wrote a letter recanting her claims of abuse due to threats and coercion by Plaintiff. (Doc. 10, at 24). Plaintiff claims that Adams's false allegation caused the judge to refuse to lift Plaintiff's bail conditions. (Doc. 10, at 24).

Since her arrest, Plaintiff alleges that she has frequently complained to Detective Minium, who now serves as Steelton's acting chief of police, but that he has blown off her claims and did not follow through on his promise to look into Shaub and Shaffer's conduct in failing to interview Plaintiff as part of their investigation. (Doc. 10, at 23). Likewise, Plaintiff asserts that District Attorney Marisco has failed to respond to her numerous calls and emails. (Doc. 10, at 11). The charges against Plaintiff appear to still be pending, and she vows not to accept any plea agreement. (Doc. 10, at 25).

Plaintiff's amended complaint is now before the Court pursuant to its statutory obligation under 28 U.S.C. § 1915(e)(2) to screen a complaint brought *in forma pauperis* and dismiss it if the complaint fails to state a claim upon which relief can be granted.

## II.   SECTION 1915(e)(2) STANDARD

Under 28 U.S.C. § 1915, the Court is obligated, prior to service of process, to screen a civil complaint brought *in forma pauperis*. The Court must dismiss the complaint if it is frivolous or malicious, or fails to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). In performing this mandatory screening function, a district court applies

the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010).

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

> *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, a court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). As the Supreme Court of the United States held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations

must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In keeping with the principles of *Twombly*, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, a court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Additionally, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

III.   **DISCUSSION**

A.   **SECTION 1983 CLAIMS**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to

8

be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To state a § 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). In order to avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

### 1. Absolute Immunity

#### a. The District Attorney's Office Defendants

In her amended complaint, Plaintiff alleges the following conduct on the part of the District Attorney's Office Defendants: (1) that Assistant District Attorney Jason was responsible for helping obtain Plaintiff's arrest warrant; (2) that Assistant District Attorney Adams lied to the Court at an August 17, 2016 bail hearing by claiming that Plaintiff's daughter wrote a letter recanting her claims of abuse because Plaintiff coerced and threatened her to do so; and (3) that District Attorney Marisco failed to investigate and respond to Plaintiff's many complaints about police officers and other officials. (Doc. 10, at 11, 22, 24). It is well settled that prosecutors enjoy absolute immunity for those actions "intimately associated with the judicial phase of the criminal process . . . ." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). "[W]hether a prosecutor is entitled to absolute immunity for his/her conduct depends on the function the prosecutor was performing." *Segers v. Williams*, 12 F. Supp. 3d 734, 738 (E.D. Pa. 2014). "The decision to

initiate a prosecution is at the core of a prosecutor's judicial role." *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992) (citations omitted). Therefore, a prosecutor will enjoy absolute immunity for his actions on behalf of the state in preparing for, initiating, and prosecuting criminal charges, even when those charges are initiated maliciously, unreasonably, or without probable cause. *See Rose v. Bartle*, 871 F.2d 331, 347 n.12 (3d Cir. 1989); *Joseph v. Patterson,* 795 F.2d 549, 557 (6th Cir. 1986), *cert. denied,* 481 U.S. 1023 (1987). While a rule of absolute prosecutorial immunity may "leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty," the potential harm to a "falsely-charged defendant is remedied by safeguards built into the judicial system— probable cause hearings, dismissal of the charges—and into the state codes of professional responsibility." *Imbler*, 424 U.S. at 427; *Kulwicki*, 969 F.2d at 1464.

In the case at bar, the only alleged actions on the part of Assistant District Attorneys Jason and Adams involve the initiation and prosecution of criminal charges against Plaintiff. (Doc. 10, at 22, 24). With respect to Jason, Plaintiff alleges that he helped initiate the charges against her by obtaining the arrest warrant. (Doc. 10, at 22). "The decision whether or not to initiate or prosecute a case is completely discretionary with prosecutors and also is absolutely immunized from a suit for damages." *Radocesky v. Munley,* 247 F. App'x 363, 365 (3d Cir. 2007) (not precedential). With respect to Adams, Plaintiff alleges that Adams lied at a hearing while prosecuting the Commonwealth's case against Plaintiff. (Doc. 10, at 24). Prosecutors are absolutely immune from damages liability under § 1983 for making false or defamatory statements or eliciting false testimony in judicial proceedings, including probable cause hearings. *Burns v. Reed*, 500 U.S. 478, 490 (1991). Because the conduct of Jason and Adams is

"intimately associated with the judicial phase of the criminal process," they are both entitled to prosecutorial immunity. *Imbler*, 424 U.S. at 430.

Plaintiff's basis for alleging liability on the part of District Attorney Marisco is unclear. Plaintiff merely claims that Marisco failed to investigate and respond to her complaints against police officers and other local officials. (Doc. 10, at 11). However, to the extent that Plaintiff blames Marisco for not prosecuting these individuals, her claim fails because the decision whether or not to imitate a prosecution is squarely within a prosecutor's judicial role and therefore protected by absolute prosecutorial immunity, as noted above.[6] *See Kulwicki*, 969 F.2d at 1464. ("A prosecutor is absolutely immune when making th[e] decision [whether to initiate prosecution], even where he acts without a good faith belief that any wrongdoing has occurred.").

It is therefore respectfully recommended that all federal claims against District Attorney Marisco and Assistant District Attorneys Jason and Adams be dismissed with prejudice because

---

[6] In construing her amended complaint liberally, as this Court is obligated to do, Plaintiff alternatively appears to blame Marisco in his administrative and investigative capacity for his failure to respond to her grievances. Because a prosecutor acting in an investigative or administrative role is not performing a core judicial function, Marisco is not entitled to full prosecutorial immunity for his actions in this capacity. *See Kulwicki*, 969 F.2d at 1463. Nonetheless, this potential construction of Plaintiff's claim also falls short. Although individuals have a First Amendment right "to petition the Government for a redress of grievances," that right does not impose a duty on government officials to respond. U.S. Const. amend. I; *see Minnesota State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues."); *see also Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 465–66 (1979) (holding that State Highway Commission's refusal to consider a grievance did not violate First Amendment). Accordingly, Plaintiff's allegation that Marisco failed to respond to her complaints does not rise to the level of a constitutional violation.

they are entitled to prosecutorial immunity for their actions and, alternatively, because Marisco's alleged conduct does not amount to a constitutional violation.

### b. Caseworker Nicole Carter

Plaintiff alleges that caseworker Nicole Carter was "brought in" by the Steelton Police Department to assist in the child abuse investigation against Plaintiff and subsequently interfered with her children's education by frequently pulling them out of class for interviews and falsely alleged at the preliminary hearing that one of Plaintiff's sons told Carter that Plaintiff beat him. (Doc. 10, at 20, 22). As is the case with prosecutors, the Third Circuit has established that child welfare workers and social workers are entitled to absolute immunity under certain circumstances. *See Ernst v. Child & Youth Servs. of Chester Cnty., 108 F.3d 486, 494-98 (3d Cir.1997).* Specifically, caseworkers are protected by absolute immunity under the same rationale as prosecutorial immunity "for their actions in petitioning and in formulating and making recommendations to the state court because those actions are analogous to functions performed by state prosecutors . . . ." *Ernst, 108 F.3d at 493.* However, child welfare employees are not protected by absolute immunity for "'investigative or administrative actions taken . . . outside the context of a judicial proceeding." *B.S. v. Somerset Cnty., 704 F.3d 250, 262 (3d Cir. 2013)* (alteration in original) (quoting *Ernst, 108 F.3d at 497 n.7*).

Here, it is clear that Carter's allegedly perjured testimony at the June 30, 2016 preliminary hearing occurred within the context of a judicial proceeding and thus Carter is plainly entitled to absolute immunity for any federal claims based on those statements. *See, e.g., Muhammad v. Dempsey, 531 F. App'x 216, 219 (3d Cir. 2013)* (not precedential) (holding that case worker was immune from suit under § 1983 where plaintiff claimed case worker committed perjury during child custody hearing); *Fanning v. Montgomery Cnty. Children & Youth*

*Servs.*, 702 F. Supp. 1184, 1186–87 (E.D. Pa. 1988) ("[A]bsolute immunity should cloak social workers with respect to their initiation of child abuse proceedings."). However, to the extent that Carter's questioning of Plaintiff's children during school hours could implicate a violation of Plaintiff's constitutional rights, the issue of whether Carter is entitled to absolute immunity for these actions is a closer determination.

Plaintiff implies that Carter began interviewing her children at school before Plaintiff was formally charged and arrested on May 26, 2016. (Doc. 10, at 20-22). Nonetheless, absolute immunity is not confined to the initiation of legal proceedings and courtroom conduct, as it also encompasses "acts undertaken 'in prepar[ation] for the initiation of judicial proceedings,' so long as they fall within a prosecutor's 'role as an advocate for the state.'" *B.S.*, 704 F.3d at 269 (quoting *Ernst,* 108 F.3d at 497). Here, Carter worked with the Steelton Police Department to interview Plaintiff's children at school and photograph any evidence of the children's physical injuries that may be signs of abuse. (Doc. 10, at 20). Further, it appears that the investigation went on for roughly three weeks before Plaintiff was arrested and charged. (Doc. 10, at 21). Based on the factual allegations in Plaintiff's amended complaint, the Court is unable to determine whether Smith was preparing for the initiation of judicial proceedings or merely performing investigative duties when she began interviewing Plaintiff's children at the school. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand."). Because this Court cannot conclude that Carter was working as an advocate, rather than an investigator, it is not clear whether Carter is entitled to absolute immunity with respect to her interviews of

Plaintiff's children. *See Burns v. Reed,* 500 U.S. 478, 486-87 (1991) (noting presumption that absolute immunity is unnecessary to protect government officials in the exercise of their duties).

Accordingly, Carter is entitled to absolute immunity only with respect to any federal claims arising out of the allegedly perjured testimony that Carter offered at the June 30, 2016 preliminary hearing.

### 2. Caseworker Tia Hunt Should be Dismissed for Lack of Personal Involvement

Although caseworker Tia Hunt is named as a Defendant in the caption of the amended complaint, Plaintiff does not to mention her anywhere in the body of the pleading. (Doc. 10). Plaintiff thus fails to allege any facts demonstrating Hunt's personal involvement in the alleged misconduct forming the basis of Plaintiff's claims. *See Baraka v. McGreevey,* 481 F.3d 187, 210 (3d Cir. 2007) (citation and quotation omitted) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable . . . ."). Given that Plaintiff makes no allegations of Hunt's personal involvement in any of the alleged claims, it is recommend that Hunt be dismissed without prejudice.[7]

### 3. Claims Against Detective Minium and Officer Elhaj Stemming from Plaintiff's August 7, 2014 Arrest

Many of Plaintiff's allegations stem from an August 7, 2014 incident where she was tased and arrested in her home after calling the Steelton Police Department to complain of domestic abuse by her ex-husband. (Doc. 10, at 16-17). Although she alleges that five Steelton

---

[7] Hunt may also be entitled to absolute immunity, as is the case for her colleague Nicole Carter with respect to Plaintiff's claim that Carter committed perjury at the preliminary hearing. Nonetheless, the Court is unable to make any determination as to immunity at this juncture because Plaintiff has not specified what actions Hunt is alleged to have taken.

police officers were present during the arrest, Plaintiff only appears to assert claims against Detective Minium and Officer Elhaj stemming from this incident.

    a.  Excessive Force

Plaintiff alleges that Minium, without warning, shoved her onto the floor of her own home and then tased her for a prolonged period while arresting Plaintiff, which this Court construes as an excessive use of force claim under the Fourth Amendment. (Doc. 10, at 16); *see also Graham v. Connor*, 490 U.S. 386, 388 (U.S. 1989). "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso,* 183 F.3d 279, 288 (3d Cir. 1999). "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen . . . .'" *Graham*, 490 U.S. at 395 n.10 (quoting *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires . . . careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. This is an objective inquiry "to be evaluated from the 'perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004) (quoting *Graham*, 490 U.S. at 396).

Here, Plaintiff has pled sufficient facts to support a Fourth Amendment excessive force claim against Minium. First, it is clear that a seizure occurred, as Plaintiff alleges that she was handcuffed, removed from her home, and taken for booking. (Doc. 10, at 16). Second,

Minium's use of force was unreasonable based on the facts alleged by Plaintiff. Specifically, as alleged in the amended complaint, Minium: (1) came to Plaintiff's home in response to Plaintiff's own complaint that she was being attacked by her ex-husband; (2) was unwilling to speak with Plaintiff and demanded to enter the home immediately despite Plaintiff stating that her ex-husband had already fled; and (3) deployed his taser on Plaintiff without warning when she did not immediately grant Minium entry into her home. (Doc. 10, at 16). Based on the facts alleged in the complaint, Minium did not arrest Plaintiff for any particularly serious crimes, Plaintiff did not pose any immediate threat to Minium's safety or the safety of others on the scene when Minium deployed his taser, and there is no indication that Plaintiff resisted arrest or attempted to flee. *See Graham*, 490 U.S. at 396. Accordingly, in construing the facts alleged in the complaint in the light most favorable to Plaintiff, this Court finds that Plaintiff has stated a Fourth Amendment excessive force claim against Minium. *See, e.g., Correa v. Simone*, 528 F. App'x 531, 535 (6th Cir. 2013) ("[P]laintiffs' right to be free from a taser shock is clearly established where they have done nothing to resist arrest or are already detained."); *Anderson v. Dauphin Cnty. Adult Prob. Office*, No. 1:15-CV-00878, 2016 WL 769278, at *9 (M.D. Pa. Jan. 25, 2016) (collecting cases to support the proposition that allegations of excessive force involving the use of a taser generally survive a motion to dismiss), *report and recommendation adopted*, No. 1:15-CV-878, 2016 WL 759162 (M.D. Pa. Feb. 26, 2016).

   b.  <u>False Arrest</u>

In addition to her excessive force claim, Plaintiff's factual allegations stemming from the August 7, 2014 incident also potentially give rise to a claim of false arrest against both Minium and Elhaj. "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable

cause." *James v. City of Wilkes–Barre,* 700 F.3d 675, 680 (3d Cir. 2012). If probable cause is established with respect to any one of the charges for which a plaintiff is arrested, a claim of false arrest must fail. *Johnson v. Knorr,* 477 F.3d 75, 82 (3d Cir. 2007). A plaintiff's guilty plea or entry into Pennsylvania's Accelerated Rehabilitative Disposition ("ADR") program serves to conclusively establish probable cause. *See Ross v. Donkocik*, 60 F. App'x 409, 410 n.1 (3d Cir. 2003) (not precedential) (citing *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994)). Plaintiff admits in her complaint that she agreed to plead guilty to a disorderly conduct offense in exchange for the dismissal of the other charges she faced as a result of the August 7, 2014 incident. (Doc. 10, at 17). Further, Plaintiff does not allege that her guilty plea has been reversed, expunged, or otherwise invalidated. Because Minium and Elhaj had probable cause to arrest Plaintiff, it is respectfully recommended that Plaintiff's Fourth Amendment false arrest claim against Minium and Elhaj be dismissed with prejudice. *See, e.g.*, *Nelson v. Jashurek*, 109 F.3d 142, 145 (3d Cir. 1997) ("[A] civil suit for an unreasonable seizure predicated on a false arrest would be barred so long as a conviction for resisting the same arrest remained unimpaired."); *Burke v. Twp. of Cheltenham*, 742 F. Supp. 2d 660, 669 (E.D. Pa. 2010) (holding that a plaintiff's guilty plea to disorderly conduct summary offense foreclosed his § 1983 claims for false arrest and false imprisonment).

### c.   False Imprisonment

To the extent that Plaintiff also wishes to assert a § 1983 claim for false imprisonment, that claim too must fail. "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). Thus, "a necessary element of a false imprisonment claim is the occurrence of a false arrest . . . ." *Rosembert v. Borough of E.*

*Lansdowne*, 14 F. Supp. 3d 631, 641 n.8 (E.D. Pa. 2014). As noted above, Plaintiff's false arrest claim is barred under *Heck* and its progeny because Plaintiff pleaded guilty to one of the charges against her. Accordingly, Plaintiff's false imprisonment claim must also fail. *See Mills v. City of Harrisburg*, 589 F. Supp. 2d 544, 551 (M.D. Pa. 2008) ("Claims of false arrest and false imprisonment under the Fourth Amendment require the plaintiff to show that he or she was arrested without probable cause."), *aff'd,* 350 F. App'x 770 (3d Cir. 2009) (not precedential). It is therefore recommended that Plaintiff's false imprisonment claim against Minium and Elhaj be dismissed with prejudice.

### d. Malicious Prosecution

Plaintiff additionally alleges that Minium intentionally charged him with frivolous drug charges and falsified his police report, which this Court construes as a malicious prosecution claim. (Doc. 10, at 17). To state a claim for malicious prosecution, a plaintiff must show "that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously . . . ; and (5) the plaintiff suffered deprivation of liberty . . . ." *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). Because Plaintiff pleaded guilty to one of the charges against her, she cannot establish that the criminal proceeding ended in her favor or that the proceeding was initiated without probable case, as is needed to set out a prima facie case for a claim of malicious prosecution. *See, e.g., Kossler v. Crisanti*, 564 F.3d 181, 193–94 (3d Cir. 2009) ("[T]he existence of probable cause for the arrest—stemming from the existence of probable cause for at least one charge—precluded the plaintiff from proceeding with her malicious prosecution claim with respect to any of the charges brought against her."). Accordingly, it is

recommended that Plaintiff's malicious prosecution claim against Minium also be dismissed with prejudice.

### e. Invasion of Privacy

Plaintiff also complains that "[t]he police" took an embarrassing mugshot of her and published it on the internet after her August 7, 2014 arrest. (Doc. 10, at 17). The Court construes these allegations as asserting a federal civil rights claim for the violation of Plaintiff's right to privacy. Although not mentioned explicitly in the Constitution, the Supreme Court has found certain "zones of privacy" embedded in the constitutional amendments. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 178 (3d Cir. 2005). Specifically, the Supreme Court recognizes "two types of privacy interests: 'One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.'" *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000) (quoting *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977)). Here, Plaintiff's allegations about the distribution of her mugshot and arrest information fall under the first category of privacy interests. However, it is well established "that arrest records and related information are not protected by a right to privacy." *Paul P. v. Verniero*, 170 F.3d 396, 403 (3d Cir. 1999). Moreover, even if mugshots and arrest information were a protected privacy interest, Plaintiff fails to satisfy the *Twombly*/*Iqbal* pleading standard to state a § 1983 claim because she does not specify the individuals responsible for publishing that information. Accordingly, this Court recommends that Plaintiff's federal civil rights claim for the invasion of her right to privacy be dismissed with prejudice for failure to state a claim.

**4. Civil Rights Claims Against Officer Shaffer, Detectives Shaub and Minium, and Caseworker Nicole Carter Stemming from their Child Abuse Investigation beginning in May of 2016**

 a. <u>Claims Against Officer Shaffer and Detective Shaub</u>

Plaintiff blames Officer Shaffer and Detective Shaub for conducting a flawed investigation in response to her daughter's allegedly false report of child abuse, which resulted in criminal charges being filed against Plaintiff. (Doc. 10, at 20-24). Shaffer first spoke with Plaintiff on May 5, 2016, after Plaintiff's daughter ran away from home and told the police that she had been abused by Plaintiff. (Doc. 10, at 20). Plaintiff complains that the Steelton Police Department should never have taken her daughter's allegations seriously because her daughter made false accusations in the past and Steelton police officers knew Plaintiff personally and thus should have known that the allegations were inconsistent with what they knew of Plaintiff's character. (Doc. 10, at 20). As the investigation progressed, Shaub took the lead while Shaffer assisted. (Doc. 10, at 21). Plaintiff alleges that Shaub obtained an arrest warrant by including statements in his affidavit of probable cause that were never made by Plaintiff's children. (Doc. 10, at 20). After Plaintiff's arrest, Shaub allegedly "defame[d] [Plaintiff's] character" by providing media outlets across Pennsylvania with the unflattering old mugshot of Plaintiff from 2014 and encouraging them to run stories about Plaintiff's arrest. (Doc. 10, at 21). Furthermore, Plaintiff alleges that Shaub lied at the June 30, 2016 preliminary hearing by claiming to have nonexistent audio evidence and falsely stating that Plaintiff's daughter accused Plaintiff of attempting to stab her when in actuality Plaintiff's daughter just accused Plaintiff of cutting up her clothes. (Doc. 10, at 23). This Court construes Plaintiff's allegations as asserting

a civil rights claim for malicious prosecution against Shaffer and Shaub, as well as false arrest and invasion of privacy claims solely against Shaub.[8]

          i.     Malicious Prosecution

As noted above in regard to the claims arising out of Plaintiff's August 7, 2014 arrest, Plaintiff must allege that her criminal proceeding ended in Plaintiff's favor to establish a claim for malicious prosecution. *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). Here, it appears clear from the amended complaint that the criminal proceeding stemming from Plaintiff's May 26, 2016 arrest remains pending. (Doc. 10, at 25). "[A] defendant in an ongoing criminal proceeding cannot bring a malicious prosecution claim." *Smith v. Holtz*, 87 F.3d 108, 113 n.4 (3d Cir. 1996). Because the underlying criminal proceeding that gives rise to Plaintiff's malicious prosecution claim against Shaffer and Shaub appears to remain pending, it is recommended that the malicious prosecution claim be dismissed without prejudice to Plaintiff's ability to reassert this claim if and when the pending criminal proceeding is resolved in Plaintiff's favor.

          ii.     False Arrest

The Court also construes Plaintiff's amended complaint as asserting a false arrest claim against Shaub. As noted above in regard to the claims arising out of Plaintiff's August 7, 2014 arrest, a plaintiff must allege that an arrest was made without probable cause to establish a

---

[8] Shaub's alleged false statements at the June 30, 2016 preliminary hearing do not give rise to a constitutional violation, as police officers are protected by absolute witness immunity from allegations that they offered perjured testimony during judicial proceedings. *Ali v. Person*, 904 F. Supp. 375, 378 (D.N.J. 1995); *Todt v. Rubenstein*, No. CIV.A. 81-2640, 1986 WL 9736, at *12 (E.D. Pa. Sept. 5, 1986), *aff'd,* 817 F.2d 753 (3d Cir. 1987) (table).

Fourth Amendment claim for false arrest. *James v. City of Wilkes–Barre,* 700 F.3d 675, 680 (3d Cir. 2012). Thus, favorable termination is not an element of a § 1983 false arrest claim. *Irvin v. Borough of Darby*, 937 F. Supp. 446, 451 (E.D. Pa. 1996). Nonetheless, "[t]he ripeness doctrine prevents adjudication of false arrest . . . claims when there is a pending state court proceeding because the legitimacy of the claims may depend upon the outcome of the state court proceeding." *LeBlanc v. Cnty. of Lancaster*, No. CIV.A. 09-1685, 2009 WL 3422991, at *4 (E.D. Pa. Oct. 21, 2009) (citing *Holloway v. Brechtse,* 279 F.Supp.2d 613, 616 (E.D. Pa. 2003)). Because Plaintiff indicates in her amended complaint that the state court criminal proceedings remain pending, this Court recommends dismissal of Plaintiff's § 1983 false arrest claim against Shaub on ripeness grounds without prejudice to Plaintiff's ability to reassert this claim once the state court proceedings have concluded.

### iii.  Invasion of Privacy

Plaintiff further accuses Shaub of "defam[ing] [Plaintiff's] character" by providing news outlets with an unflattering old mugshot of Plaintiff and encouraging them to run stories about Plaintiff's arrest, which the Court construes as an alleged violation of Plaintiff's constitutional right to privacy. (Doc. 10, at 21). As noted above, however, "arrest records and related information are not protected by a right to privacy." *Paul P. v. Verniero*, 170 F.3d 396, 403 (3d Cir. 1999). Accordingly, it is respectfully recommended that Plaintiff's § 1983 invasion of privacy claim against Shaub be dismissed with prejudice for failure to state a claim.

### b.  Claim Against Detective Minium

Although Officer Shaffer and Detective Shaub conducted the child abuse investigation that resulted in Plaintiff's arrest, Plaintiff also blames Detective Minium, Steelton's acting chief of police, for failing to satisfactorily respond to Plaintiff's complaints about Shaffer and Shaub.

(Doc. 10, at 23). To the extent that Plaintiff seeks to bring a claim against Minium under a theory of supervisory liability, it is well established that "liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citations and quotations omitted). Personal involvement can be demonstrated through allegations of "personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. "Moreover, "[a]llegations of . . . actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode*, 845 F.2d at 1207. Thus, "an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability." *Padilla v. Beard*, No. CIV. 1:CV–06–0478, 2006 WL 1410079, at *3 (M.D. Pa. May 18, 2006).

Here, Plaintiff fails to state a claim that she suffered any constitutional violation as a result of the child abuse investigation led by Shaffer and Shaub, let alone allege that Minium was somehow personally involved in the supposed deprivation. It is beyond cavil that a supervisory official cannot be liable under § 1983 where no underlying constitutional injury occurred. *See JGS v. Titusville Area Sch. Dist.*, 737 F. Supp. 2d 449, 458 (W.D. Pa. 2010) ("It is axiomatic that an individual cannot be derivatively liable for a constitutional claim that lacks legal or evidentiary merit."). *See generally City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."). Accordingly, it is respectfully recommended that

Plaintiff's supervisory liability claim against Minium be dismissed without prejudice for failure to state a claim because Plaintiff cannot establish that an underlying constitutional violation occurred while his criminal proceeding remains pending.

c. Fourth Amendment Illegal Seizure and Fourteenth Amendment Due
   Process Claims Against Nicole Carter

Plaintiff further alleges that caseworker Nicole Carter excessively questioned her children while they were at school as part of the child abuse investigation, thus potentially implicating two constitutional rights: the Fourth Amendment right to be free from illegal searches and seizures as well as the substantive due process component of the Fourteenth Amendment.

i. Illegal Seizure

Turning first to the Fourth Amendment claim, "it is clear that the interview of a child implicates that child's Fourth Amendment interests," but the Fourth Amendment is violated only if the intrusion is unreasonable. *Coleman v. State of New Jersey Div. of Youth & Family Servs.*, 246 F. Supp. 2d 384, 392 (D.N.J. 2003); *see also Tenenbaum v. Williams*, 193 F.3d 581, 606 (2d Cir. 1999) ("[T]he Fourth Amendment's reasonable or probable cause and exigent circumstances doctrines apply to searches and seizures made in the course of child abuse investigations."); *Calabretta v. Floyd*, 189 F.3d 808, 814 (9th Cir. 1999) ("[T]he general law of search warrants applied to child abuse investigations."). It is equally clear, however, "that Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969); *see also United States v. Stearn*, 597 F.3d 540, 551 (3d Cir. 2010) ("[A] defendant's Fourth Amendment rights are not violated by the introduction of evidence obtained in violation of a third party's rights."). Thus, "although parents may bring a civil rights claim under 42 U.S.C. § 1983 for the violation of their children's

Fourth Amendment rights, they do so only on *behalf* of their minor children and cannot assert an independent Fourth Amendment violation for the warrantless seizure of their children." *Graham v. Dist. Attorney of Bucks Cnty.*, No. CIV.A. 10-1130, 2015 WL 1229492, at *12 (E.D. Pa. Mar. 17, 2015) (citing *Southerland v. City of New York,* 680 F.3d 127, 143 (2d Cir. 2012); *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1204 (10th Cir. 2003)). Accordingly, Plaintiff cannot establish as a matter of law that Carter's questioning of her children violated Plaintiff's own Fourth Amendment rights.

Furthermore, this Court declines to liberally construe Plaintiff's amended complaint as asserting a Fourth Amendment claim on behalf of her minor children. Although a litigant has a right to act as his or her own counsel, *see* 28 U.S.C. § 1654, this right does not extend to claims brought by *pro se* litigants on behalf of a minor child. *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882–83 (3d Cir. 1991) (holding that *pro se* litigant is not permitted to represent his minor children); *Williams v. United States*, 477 F. App'x. 9, 11 (3d Cir. 2012) (not precedential) (per curiam) (holding that plaintiff with power of attorney for her father is not permitted to represent her father *pro se* in federal litigation); *see also Meeker v. Kercher,* 782 F.2d 153, 154 (10th Cir. 1986) ("We hold that under Fed. R. Civ. P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney."). Accordingly, the Court recommends dismissal without prejudice of any potential Fourth Amendment claims against Carter on behalf of Plaintiff's children, in the event that those claims may be asserted in another lawsuit with the assistance of professional counsel. *See Norman v. Greenwood Cnty. Sch. Dist. 52*, No. CA 8:13-421-TMC-JDA, 2013 WL 1281926, at *2 (D.S.C. Mar. 4, 2013) (summarily dismissing a complaint filed by a *pro se* plaintiff asserting injuries suffered by minor child and advising plaintiff that "if, following summary dismissal of

th[e] improperly brought case, [p]laintiff still wants to pursue [the minor child's] alleged constitutional claims, professional legal counsel must be obtained to represent the minor child in any such lawsuit"), *report and recommendation adopted*, No. CA 8:13-421-TMC, 2013 WL 1281922 (D.S.C. Mar. 26, 2013).

ii.   Due Process

Carter's child abuse investigation also potentially implicates Plaintiff's "constitutionally protected liberty interest[ ] . . . in the custody, care and management of [her] children." *Croft v. Westmoreland Cnty. Children & Youth Servs.,* 103 F.3d 1123, 1125 (3d Cir. 1997). However, "this liberty interest in familial integrity is limited by the compelling governmental interest in the protection of children——particularly where the children need to be protected from their own parents." *Croft*, 103 F.3d at 1125. Thus, "the right to familial integrity does not include a parent's right to remain free from child abuse investigations." *Coleman v. State of New Jersey Div. of Youth & Family Servs.*, 246 F. Supp. 2d 384, 388 (D.N.J. 2003). "[W]here abusive action by a member of the executive branch is alleged, 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Government action in investigating allegations of child abuse violates substantive due process only where it is "so ill-conceived or malicious that it 'shocks the conscience,'" as mere negligence does not suffice. *Miller*, 174 F.3d at 375 (quoting *Lewis*, 523 U.S. at 846).

Courts within the Third Circuit have found that a mother's liberty interest in the care, custody, and management of her children is not interfered with unless the mother is actually separated from her children. *See Coleman*, 246 F. Supp. 2d at 390; *Rinderer v. Delaware Cnty. Children & Youth Servs.*, 703 F. Supp. 358, 361 (E.D. Pa. 1987). Here, Plaintiff merely disagrees

with the timing and duration of Carter's interviews of her children while they were at school, but does not allege that Carter ever separated Plaintiff from her children. (Doc. 10, at 20-22). Carter's alleged conduct in excessively questioning Plaintiff's children at their school simply does not rise to the level a substantive due process violation. *See Coleman*, 246 F. Supp. 2d at 390 ("[T]he caseworkers' conduct while certainly not condonable, does not rise to the level of a constitutional violation, and does not even approach the inappropriate behavior of the caseworker in *Miller* where the caseworker had three children temporarily removed from the home based on false information provided to a judge."); *Fanning v. Montgomery Cnty. Children & Youth Servs.*, 702 F. Supp. 1184, 1190 (E.D. Pa. 1988) ("At most, plaintiffs make out a case of 'excess of zeal,' which does not provide a basis for a substantive due process claim."). Accordingly, it is respectfully recommended that Plaintiff's Fourteenth Amendment substantive due process claim against Carter be dismissed with prejudice for failure to state a claim.

### 5. First Amendment Retaliation Claim

Plaintiff also appears to assert that the child abuse investigation was initiated in retaliation for Plaintiff's previous legal disputes against the City of Harrisburg and various municipal officials, and specifically as a response to the lawsuit she initiated after her September 18, 2014 car crash. (Doc. 10, at 22). "To establish a claim for retaliation contrary to the First Amendment, a plaintiff must show: (1) he engaged in constitutionally protected conduct, (2) he was subjected to adverse actions by a state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action." *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011). An action amounts to retaliation if the conduct is "sufficient to deter a person of ordinary firmness from exercising h[er] First Amendment rights." *McKee v. Hart,* 436 F.3d 165, 170 (3d Cir. 2006) (quotation marks and citation omitted).

Plaintiff's amended complaint, as pleaded, is insufficient to state a claim of retaliation. As a preliminary matter, Plaintiff fails to specify the individual Defendants personally involved in the alleged retaliation. Moreover, although the filing and prosecution of a civil lawsuit is protected by the First Amendment, *see Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002), Plaintiff fails to allege sufficient facts to plausibly demonstrate that her earlier lawsuits were a substantial motivating factor in the initiation of the child abuse investigation. Instead, Plaintiff attempts to "tie disparate events, committed by different actors, together into a seamless web of retaliation," by cataloguing her history of unsatisfactory encounters with police and government officials representing various Dauphin County municipalities over the past seven years. *Brown v. Varner*, No. 3:11-CV-1258, 2013 WL 4591817, at *15 (M.D. Pa. Aug. 28, 2013).

"To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503–04 (3d Cir. 1997); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920–21 (3d Cir. 1997)). "Courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks, months or years separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation." *Victor v. Huber*, No. 3:12-CV-282, 2012 WL 2564892, at *9 (M.D. Pa. Feb. 28, 2012) (citing *Killen v. N.W. Human Servs., Inc.*, No. 06–4100, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) (seventeen days insufficient to establish causation); *Smith v. ABF Freight Sys., Inc.*, No. 04–2231, 2007 WL 3231969, at *11 (M.D. Pa. Oct. 29, 2007) (one and one-half months insufficient

to establish causation); *Mar v. City of McKeesport,* No. 05–19, 2007 WL 2769718, at *4 (W.D. Pa. Sept. 20, 2007)) (three months insufficient to establish causation); *Fischer v. Transue,* No. 04–2756, 2008 WL 3981521, *10 (M.D. Pa. Aug. 22, 2008)) (three weeks insufficient to establish causation)). In the absence of such proof, a plaintiff must show that the "evidence gleaned from the record as a whole" provides an inference of causation. *DeFlaminis,* 480 F.3d at 267 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). Thus, the temporal proximity of a retaliatory act to the protected activity is probative, but not dispositive, of causation.

Here, the facts as pleaded in Plaintiff's complaint simply do not permit a reasonable inference of retaliation. First, it appears that a significant amount of time elapsed between the 2014 car crash that gave rise to Plaintiff's most recent civil lawsuit and the initiation of the child abuse investigation. "Where years have passed between the events that a plaintiff seeks to circumstantially link together, the logical causal connection that is essential to a retaliation claim simply fails." *Victor*, 2012 WL 2564892, at *9 (citing *DeFranco v. Wolfe,* 387 F. App'x 147 (3d Cir. 2010) (not precedential)). Accordingly, Plaintiff has failed to establish a temporal proximity or pattern of antagonism to suggest a causal link between her previous lawsuits and the alleged retaliatory action.

In addition to the lack of temporal proximity, another factor indicates a lack of causal connection. None of the Defendants that Plaintiff names in connection to the child abuse investigation appear to have been named as defendants to the lawsuit stemming from the 2014 car crash, and courts traditionally have displayed skepticism of retaliation claims against individuals who were not named in a plaintiff's earlier constitutionally-protected action. *See, e.g., Victor v. Lawler*, No. 3:07-CV-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010) (collecting cases), *aff'd,* 565 F. App'x 126 (3d Cir. 2014); *Evans v. Rozum*, No. CIV.A. 07-2301,

2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) (holding that because plaintiff's pending lawsuit was not filed against the moving defendants, "there is no apparent reason why [the moving defendants] would want to retaliate against [p]laintiff for filing a lawsuit against others"). Indeed, the 2014 car crash involved Harrisburg police and municipal officials, whereas the child abuse investigation was led by the Steelton Police Department. Accordingly, Plaintiff's First Amendment retaliation claim, as pleaded, fails to state a claim upon which relief may be granted, as the factual allegations do not provide a basis from which an inference of causation could be drawn. It is therefore recommended that Plaintiff's retaliation claim be dismissed without prejudice.

B. STATE LAW CLAIMS

In construing her amended complaint liberally, as this Court must do, Plaintiff also appears to assert state law claims. Although Plaintiff's amended complaint is hardly a model of clarity in terms of the state law claims she seeks to assert, the Court construes the pleading as asserting state law claims for assault and battery, false arrest, false imprisonment, malicious prosecution, and defamation.

1. **Assault and Battery**

In addition to the Fourth Amendment claim for excessive force, Plaintiff also has a potential state law assault and battery claim against Minium for his use of a taser on her while effectuating the August 7, 2014 arrest. Under Pennsylvania law, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (quoting *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. Super. Ct. 1950)). "A police officer may be held liable for assault and battery

when the jury determines that the force used in making an arrest is unnecessary or excessive . . . ." *Renk*, 641 A.2d at 293. Here, Plaintiff has alleged sufficient facts for a jury to conclude that Minium used unnecessary force in effectuating her arrest. According to the amended complaint, Minium lacked a reasonable basis for deploying his taser and gave no warning before doing so. Construing these factual allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has adequately pleaded the elements of an assault and battery claim against Minium. *See, e.g., McIntosh v. Crist*, No. CIV.A. 3:13-103, 2015 WL 418982, at *13 (W.D. Pa. Feb. 2, 2015) (denying defendant police officers' motion to dismiss state law assault and battery claims where plaintiffs were allegedly tased several times during their arrest).

### 2.  False Arrest, False Imprisonment, and Malicious Prosecution

Plaintiff's § 1983 claims for false arrest, false imprisonment, and malicious prosecution stemming from her August of 2014 and May of 2016 arrests may also be asserted as state law claims. Nonetheless, as with their § 1983 counterparts, "state law claims of false arrest, false imprisonment, and abuse of process . . . all . . . turn on whether probable cause existed for the arrest." *Reedy v. Evanson*, 615 F.3d 197, 211 n.22 (3d Cir. 2010); *McNeil v. City of Easton*, 694 F. Supp. 2d 375, 399 (E.D. Pa. 2010) ("Claims for false arrest, false imprisonment, and malicious prosecution under Pennsylvania law each require a lack of probable cause."). "[S]tate law false arrest and malicious prosecution claims are coextensive and require the same showings as the parallel federal claims in question." *Lincoln v. Hanshaw*, No. CIV.A. 08-4207, 2009 WL 1259099, at *4 n.12 (E.D. Pa. May 6, 2009) (citing *Patzig v. O'Neil*, 577 F.2d 841, 851 n.11 (3d Cir. 1978)), *aff'd,* 375 F. App'x 185 (3d Cir. 2010) (not precedential).

As noted above, probable cause was conclusively established as to Plaintiff's August 7, 2014 arrest because Plaintiff pleaded guilty to a disorderly conduct charge as a result of that incident. (Doc. 10, at 17). Moreover, the presence or absence of probable cause for Plaintiff's May 26, 2016 arrest will be adjudicated as part of the pending criminal proceedings against her. The ripeness doctrine provides that "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). Because a guilty verdict in Plaintiff's criminal proceedings would invalidate Plaintiff's state law claims for false arrest and malicious prosecution by establishing that probable cause existed for her May 26, 2016 arrest, these state law claims are not ripe for adjudication. *See, e.g.*, *Holloway v. Brechtse*, 279 F. Supp. 2d 613, 616 (E.D. Pa. 2003) (dismissing state law false arrest and false imprisonment claims on ripeness grounds because criminal charges against the plaintiff were still pending in state court).

Accordingly, it is recommended that Plaintiff's state law claims for false arrest, false imprisonment, and malicious prosecution stemming from her August of 2014 arrest be dismissed with prejudice for failure to state a claim, but that Plaintiff's state law claims for false arrest and malicious prosecution stemming from her May 26, 2016 arrest be dismissed without prejudice as not yet ripe.

### 3. Defamation

Also in conjunction with her May of 2016 arrest, Plaintiff alleges that Shaub "went out of his way to publically defame [her] character." (Doc. 10, at 21). Specifically, Plaintiff asserts that Shaub told media outlets across Pennsylvania of Plaintiff's arrest and also shared an unflattering mugshot of her, in addition to informing the local housing authority of Plaintiff's arrest in an effort to get her housing assistance revoked. (Doc. 10, at 21, 23). Under

Pennsylvania law, a plaintiff seeking to assert a claim for defamation must allege: "(1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion." *Casselli v. City of Phila.*, 54 F. Supp. 3d 368, 376 (E.D. Pa. 2014) (citing 42 Pa. Cons. Stat. § 8343). A statement is defamatory if it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 872 (E.D. Pa. 2000). Moreover, "[u]nder Pennsylvania law, a statement indicating that the plaintiff has engaged in criminal activity constitutes slander *per se,* obviating the need for the plaintiff to prove 'special harm' under § 8343(a)(6)." *Thompson v. Wagner*, 631 F. Supp. 2d 664, 686 (W.D. Pa. 2008).

It is well established that truth is an absolute defense to defamation in Pennsylvania. *See* 42 Pa. Cons. Stat. § 8343(b)(1). Nonetheless, because it is an affirmative defense, the truthfulness of an allegedly defamatory communication generally should not be addressed at the motion to dismiss stage. *Fanelle v. LoJack Corp.*, 79 F. Supp. 2d 558, 562 (E.D. Pa. 2000). Nonetheless, dismissal is appropriate where an affirmative defense is evident from the face of the complaint. *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005); *see also Fanelle*, 79 F. Supp. 2d at 563 ("Any affirmative defenses not appearing on the face of the complaint, including the defense of truth in a defamation claim, are properly considered at another stage of the case."). Here, Plaintiff alleges that Shaub sent two defamatory communications: a copy of her mugshot and notice of her arrest to local media outlets, and a letter informing the local housing authority of Plaintiff's arrest. (Doc. 10, at 21). It is clear from Plaintiff's amended complaint that the

mugshot Shaub sent was indeed Plaintiff's mugshot, and that Plaintiff was arrested and charged on May 26, 2016. (Doc. 10, at 21). Because it is conclusively established on the face of Plaintiff's amended complaint that Shaub's communications were truthful, it is respectfully recommended that Plaintiff's defamation claim be dismissed with prejudice. *See Morrison v. Chatham Univ.*, No. CV 16-476, 2016 WL 4701460, at *4 (W.D. Pa. Sept. 8, 2016) (granting motion to dismiss defamation claim because truthfulness of the alleged defamatory statement was clear on the face of the complaint).

## IV.   LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, a court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Accordingly, it is recommended that Plaintiff be given the opportunity to file a second amended complaint that is complete in all respects. The proposed amended complaint must be a pleading that **stands by itself without reference to the original complaint**. *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992) (emphasis added). The amended complaint must also specify, in a coherent fashion, how each individual Defendant contributed to the allegations giving rise to the complaint. Further, it must be "**simple, concise, and direct**" as required by Rule 8(d)(1). However, the Court does not recommend granting leave for Plaintiff to reassert any claims against District Attorney Marisco and Assistant District Attorneys Adams and Jason because they are entitled to prosecutorial immunity. Furthermore, leave to amend would also be futile as to: (1) any federal claim against caseworker Carter based on her allegedly perjured testimony at the preliminary hearing; (2) claims arising under § 1983 and/or state law for false arrest, false imprisonment, malicious prosecution, and invasion of privacy against

Detective Minium and Officer Elhaj as a result of Plaintiff's August 7, 2014 arrest; and (3)

claims stemming from Plaintiff's May 26, 2016 arrest against Detective Shaub for invasion of

privacy under § 1983 and for defamation under state law, as well as against caseworker Carter

for an illegal seizure under the Fourth Amendment[9] or a due process violation under the

Fourteenth Amendment pursuant to § 1983.[10]

## V.   RECOMMENDATION

Based on the foregoing, it is recommended that:

1. The following Defendants and claims be **DISMISSED WITH PREJUDICE** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B):

   a. All claims against District Attorney Marisco and Assistant District Attorneys Adams and Jason on the grounds of prosecutorial immunity;

   b. Any claim against caseworker Carter based on her allegedly perjured testimony at Plaintiff's June 30, 2016 preliminary hearing on the ground of witness immunity;

   c. All claims against Detective Minium and Officer Elhaj for false arrest, false imprisonment, malicious prosecution, and invasion of privacy under either federal or state law stemming from their August 7, 2014 arrest of Plaintiff;

   d. Any claims against Detective Shaub for invasion of privacy pursuant to 42 U.S.C. § 1983 or for defamation under state law stemming from the May 26, 2016 arrest of Plaintiff; and

---

[9] This Recommendation is not intended to foreclose the possibility of a future Fourth Amendment claim against Carter on behalf of Plaintiff's minor children, to be asserted in another lawsuit and with the assistance of professional counsel.

[10] Although the Court recommends granting Plaintiff leave to amend in regard to her malicious prosecution and false arrest claims under federal and state law against Detective Shaub and Officer Shaffer stemming from Plaintiff's May 26, 2016 arrest, those claims will not ripen until her state court criminal proceeding concludes.

    e.   Any claims against caseworker Carter pursuant to 42 U.S.C. § 1983 for illegal seizure under the Fourth Amendment or a due process violation under the Fourteenth Amendment stemming from Carter's involvement in the child abuse investigation that led to Plaintiff's May 26, 2016 arrest.

2.   The following claims be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B):

    a.   Any claims against caseworker Hunt for lack of personal involvement;

    b.   All claims against Detective Shaub and Officer Shaffer for malicious prosecution, and against Shaub for false arrest, under either federal or state law, stemming from their May 26, 2016 arrest of Plaintiff;

    c.   Any supervisory liability claim against Detective Minium on the basis of his role as acting chief of the Steelton Police Department during Plaintiff's May 26, 2016 arrest; and

    d.   Any First Amendment retaliation claim stemming from Plaintiff's May 26, 2016 arrest.

3.   Plaintiff be **ALLOWED TO PROCEED** as to her Fourth Amendment excessive force and state law assault and battery claims against Detective Minium;

4.   The Clerk of Court be directed to **TERMINATE** Defendants District Attorney Marisco, Assistant District Attorney Adams, Assistant District Attorney Jason, Officer Elhaj, and caseworker Carter from this action;

5.   Plaintiff be given thirty (30) days leave to file a second amended complaint that reasserts his remaining claims in accordance with Rule 8(d)(1) of the Federal Rules of Civil Procedure; and

6.   The matter be remanded to the undersigned for further proceedings.

**BY THE COURT:**

Dated: November 3, 2016

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMIRA RANDOLPH-ALI, | |
| Plaintiff | CIVIL ACTION NO. 1:16-CV-01625 |
| v. | (CONNER, C.J.) |
| | (MEHALCHICK, M.J.) |
| STEELTON POLICE DEPARTMENT, et al., | |
| Defendants. | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **November 3, 2016**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: November 3, 2016**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**